## Grand Lodge of the U. S., etc., v. Ohnstein.

1.  MUTUAL BENEFIT SOCIETIES—*Contracts with Members Subject to Law Governing Life Insurance Policies.*—A mutual benefit society is not a life insurance company in the restricted sense in which that term is used in statutes relating to life insurance companies, but membership in such societies is in the nature of a mutual life insurance, and the contract is subject to the rules of law governing life insurance policies, except so far as those rules must be held to be modified by the peculiar organization, object and policy of such societies.

2.  SAME—*Designation of Beneficiaries.*—Under a by-law of a mutual benefit society providing that every lodge keep a book in which every member shall declare in writing, upon a blank form provided, to whom the amount of his benefit shall be paid after his death, and requiring that the names of such beneficiaries be written in full, a designation as follows—"Payable to such parties as provided for in my will," is sufficient, and the object of the by-laws substantially attained.

**Assumpsit,** on a beneficiary certificate.   Trial in the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.   Verdict and judgment for plaintiff; appeal by defendant.   Heard in the Branch Appellate Court at the October term, 1898.   Affirmed.   Opinion filed October 27, 1899.

**Statement.**—Appellee sued to recover as one of three beneficiaries of one Lipman Lichtenstein, deceased, who in his lifetime was a member of a subordinate lodge of the Grand Lodge of the United States of the Independent Order of Free Sons of Israel.   The endowment laws of the order create an endowment fund, and provisions relating to the present controversy are as follows:

"Section 2.   The object of the fund created in Section 1 is to assist widows and orphans, parents and such other beneficiaries as may be designated by the members of this order, in accordance with the laws and rules contained in this article.   From this fund shall be paid upon the decease of a member the sum of $1,000, and this amount shall be paid first to his widow; second, to his children, if he leaves no widow; third, to his parents, if he leaves neither widow nor children.

"No other person shall be entitled to the amount aforesaid, unless a member shall have so designated in writing

to his lodge in the manner hereinafter provided; provided, however, and in any designation which a member may make, at least $500 must be left to his widow, and that a member who may be a widower shall leave at least $500 to his children, which amount may be left to either one or all of them.

"Section 3. Every lodge is in duty bound to keep a book in which each member may, and each member having neither wife, children or parents, shall declare upon a blank form therein provided, to whom the amount provided for in these laws shall be paid after his death," and said blank form being in words as follows:

"Independent Order Free Sons of Israel, ———18—, Lodge No.——. I, ——————, hereby direct, in accordance with the endowment laws of the Order of Free Sons of Israel, that the sum of $1,000 provided for by said laws shall be paid as follows: ——— ——— ———. The names of person or persons to whom a brother desires to make a bequest must be written in full. Signed, ———. Witness, ———.

"Part 3, Article 4, Section 3. A brother, in making his declaration and bequeathing the amount of endowment, or any part thereof, to his wife, shall give in such declaration the full name of said wife, place and date of marriage.

"Designation made upon the aforesaid blank form shall be signed by the member making the same, and shall be witnessed by a brother of the lodge, who shall sign his name thereto as a witness. The declaration shall be arranged so as to secure absolute secrecy for the designation made therein. Such book shall be kept well locked and with proper care by the secretary of the lodge, who shall deliver the same to his successor in office, taking a receipt therefor. Nothing in this section shall be deemed to abrogate any of the provisions of section 2 of this article.

"Section 4. Should any member having neither wife, children nor parents, fail or neglect to make such declaration, as provided in section 3 of this article, the legal amount shall be placed in the endowment reserve fund, providing, however, that if such a member, at his death, does not leave any means, he shall be buried at the expense of the grand lodge of the United States, through the committee on endowment. The amount incurred for that purpose must not exceed $100, and shall be paid out of the endowment reserve fund."

It appears that there was kept in each lodge a designa-

tion book, in which each member was required to designate the persons to whom, as his beneficiaries, the benefit should be payable. This book was so arranged as to be opened only by a key, and consisted of a compilation of blank forms, filled out by the members respectively. When so filled out such form was covered by a sheet of paper pasted at the edges in such way that the designation so written by the member was concealed, and no one but himself and his witnesses were supposed to know what he had written. Upon the outside of this blank sheet was inscribed the name of the member. After his death the sheet was torn off, thus revealing the written designation of the beneficiaries.

In the present case, Lipman Lichtenstein first designated his wife. She having died, he afterward filled out a second form, as follows:

" Independent Order Free Sons of Israel,
" Moses Lodge, No. 18.
" CHICAGO, January 13, 1891.

" I, L. Lichtenstein, hereby direct, in accordance with the endowment laws of the Order of Free Sons of Israel, that the sum of $1,000, provided for by said laws, shall be paid as follows: (in writing) *Payable to such parties as provided for in my will.* (The name of the person or persons to whom a brother desires to make a bequest must be written in full.)

" Signed,   L. LICHTENSTEIN."

Lichtenstein died leaving neither widow, children, parents nor descendants of children. He left a will dated February 12, 1891, thirty days subsequent to the date of the foregoing designation.

The provision of his will which, it is claimed, provides for the payment of the $1,000 to his beneficiaries, under the endowment laws of the appellee, is as follows:

" Tenth. I order that the balance of my estate, being real, personal, and such amount as be derived from life insurance, be divided equally into three parts and distributed as soon after my decease as conveniently may be, two parts ($\frac{2}{3}$) to be delivered to Mrs. Hannal Ohnstein, my sister, and one part ($\frac{1}{3}$) to Julius Ohnstein, my brother-in-law."

MORAN, KRAUS & MAYER, attorneys for appellant.

HOFHEIMER & PFLAUM, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended by counsel for appellee that the words " payable to such parties as provided for in my will " are invalid and ineffectual to designate beneficiaries, for lack of conformity to the provisions and requirements of the by-laws.

It is clear that under these by-laws a member having neither wife, children nor parents, may designate other persons as his beneficiaries. The question is whether, in the case before us, the designation as made was sufficient.

It is urged that the clause at the bottom of the designation blank, namely, " The name of the person or persons to whom a brother desires to make a bequest must be written in full," was not literally complied with. It is not denied that in other respects there was substantial compliance. The designation was in writing and was made upon the blank form as required, and if in the will the names of the parties are clearly given to whom the deceased desired this benefit to be paid, the object of the by-laws is substantially attained. The only objection is that he did not write out upon the blank form itself the names of the beneficiaries in full. This objection is purely technical. It might be answered by an argument equally technical, that the clause in question does not by its terms provide that " the names of the persons to whom a brother desires to make a bequest must be written in full," upon the blank form. It merely requires them to be " written in full;" and requires that the member " shall declare upon a blank form therein provided to whom the amount provided for  *  *  *  shall be paid after his death;" in this case the parties as provided in the will.

It might be thus very plausibly urged that the language of the by-laws and of the clause in question has been literally complied with.

Section 3 of the by-laws prescribes the form of the blank.

It is in the form so prescribed, after the space left for the designation of the beneficiary, and before the signature, that the clause in controversy occurs. It is, apparently, a mere direction to the member, intended to caution him against a failure to clearly identify the payees, in order to avoid mistake or ambiguity. We do not regard it as intended to be a distinct provision, a literal compliance with which is essential to the validity of a designation. If a name should be inserted with one or more initial letters, instead of the full middle names, the direction would not be literally complied with, and yet it would scarcely be seriously contended that for that reason alone there was a substantial failure to comply with the letter and spirit of the by-law, such as to invalidate the designation and deprive the beneficiary of the right to be paid. We regard the designation as substantially in the mode required in the by-laws.

It is said, however, that the beneficiary could not be changed by will, and that there was in this case an attempt to reserve such power. There is no evidence in the case before us that any such change was made, or that more than one will was drawn.

The question is more serious, whether the will in this case contains an actual provision for the payment of this benefit fund to the parties claiming thereunder.

It may be conceded that a designation by will, of persons or purposes outside of what the contract or by-laws of the appellant permit, could not be allowed. It is only where the designation by will is substantially in accordance with the contract that it can be deemed valid. It is not contended in this case that the persons designated, and whose names are given in the will, are not competent as beneficiaries under the by-laws of the order, if they have been properly and clearly designated, in compliance with those by-laws. But it is urged that, even if the designation by the deceased upon the blank form provided be deemed sufficient, the language of the will fails to provide expressly or clearly for the payment of this fund in controversy.

The testator directs that the balance of his estate, " being real, personal, and such amount as be derived from life insurance," be divided between appellee and the sister of the testator. Can this language be properly held to describe the fund to which his beneficiaries, namely, " such parties as provided for in my will," would be entitled ? This must be determined from the will itself. " The intention must be so clear that no other reasonable intention can be imputed to the will." Arthur v. The Odd Fellows Beneficial Association of Columbus, 29 Ohio St. 557. In Martin v. Stubbings, 126 Ill. 387, on page 403, it is said :

" A mutual benefit society is not a life insurance company, in the restricted sense in which that term is used in our statute in relation to life insurance companies, nor is a certificate of membership in such society a policy of life insurance in the same restricted sense of the term, yet it is manifest that such membership certificate is in the nature of a mutual life insurance policy. * * * Such contracts are, therefore, subject to the rules of law governing life insurance policies, except so far as those rules must be held to be modified by the peculiar organization, object and policy of such societies."

The section of the by-laws of the order which creates the endowment fund under consideration, also provides that " each member shall be entitled to the benefits of said fund as hereinafter provided;" and the next section states the object of the fund to be to "assist widows and orphans, parents, and such other beneficiaries as may be designated by the members of the order;" and provides that payment from it shall be made upon the decease of the member. It is therefore, we think, evident that the endowment fund is in the nature of life insurance in the same way, and to the same extent, as a membership certificate in an ordinary mutual benefit society. If we are right in this conclusion, then the provision of the will disposing of such amount as should be " derived from life insurance" includes the fund in controversy, and is a sufficient designation of the particular fund which was, by the member's appointment, made " payable to such parties as provided for in my will." Appel-

lee was one of these parties.    As is said in Order of For-
esters v. Malloy, 169 Ill. 58 :

"The implication to be drawn from the language of the
will, that the testator possibly regarded the endowment as
a part of his estate, can have no effect to defeat the manifest
intention that appellee should receive it."

In that case, also, the word "insurance" was used to desig-
nate the benefit, and it was described as "insurance in the
Order of Catholic Foresters." In the case before us the
will must be considered as a document referred to in the
member's designation of the beneficiaries, as containing
the names of the latter, and the two together—the designa-
tion and the will—as indicating the intention of the deceased
member.    This intention, when thus clearly made manifest,
"ought to be observed and carried out," unless inconsistent
with the objects and aims of the order, and the rules of law
applicable.    (See Alexander v. Parker, 42 Ill. App. 465.)    No
such inconsistency appears.

The judgment of the Circuit Court must be affirmed.