# THIRD DEPARTMENT

AT

# GENERAL TERM,

## 𝕯𝖊𝖈𝖊𝖒𝖇𝖊𝖗, 1889.*

| 55 257 |
| 66 301 |

JAMES H. HANNIGAN AND OTHERS, RESPONDENTS, *v.* T. S. INGRAHAM AND OTHERS, APPELLANTS.

*Mutual benefit insurance — when the amount of the insurance passes to the family of the insured, as given by his will, to the exclusion of other legatees named therein.*

In an action brought to determine to whom a fund, the proceeds of a life insurance policy, should be paid, it appeared that James H. Hannigan, the assured, became a member of the Locomotive Engineers' Mutual Life Insurance Association and received a certificate of membership, upon which, immediately below the signature of the president and secretary of the association, were printed the following words: "All payments or benefits that may accrue or become due to the heirs of the persons insured by virtue of this policy will be payable to ... ..... or ........ lawful heirs."

James H. Hannigan left a will by which he bequeathed certain money to each of his three sons and to his daughter, and a further sum to his sister-in-law, to be paid out of the proceeds of his life insurance. the residue of his property he gave to his wife.

*Held,* that the words, "heirs" and "lawful heirs," employed in the form attached to the certificate of insurance, should not be construed in their technical and legal sense, but rather as intending the widow and children of the deceased, especially in view of the fact that the by-laws of the association contained the following

---

* Decisions handed down December 28, 1889.

HUN—VOL. LV    33

declaration: "Its object being to aid and benefit the families of deceased members of the brotherhood in a simple and substantial manner."

*Kaiser* v. *Kaiser* (13 Daly, 522); *Day* v. *Case* (43 Hun, 179) distinguished.

That the wife and children of the assured were legally entitled to the fund in the proportions named in the will.

*Semble,* that the bequest to the sister-in-law was invalid, so far as it concerned the insurance moneys in question, because in violation of the object of the association as expressed in its by-laws.

APPEAL by the plaintiffs from a judgment entered, upon a trial before the court, in the office of the clerk of the county of Albany on the 26th day of July, 1889, in favor of the defendant Jane T. Hannigan, individually, and as executor of the last will and testament of James H. Hannigan, for the recovery from · the secretary and treasurer of Albany Division No. 46 of the Locomotive Engineer's Mutual Life Insurance Association of the fund of $3,000, the amount of insurance upon the life of James H. Hannigan, to be paid over by her as follows:

"To the plaintiff James H. Hannigan the sum of three hundred dollars; to the plaintiff William A. Hannigan the sum of one hundred dollars; to the plaintiff Mary J. Hannigan one hundred dollars; to the defendant Francis Hannigan one hundred dollars; to the defendant John J. Hannigan one hundred dollars; and the said defendant Jane T. Hannigan is to retain for herself the remainder of said fund, to wit, twenty-three hundred dollars, for her own personal use and benefit."

*I. B. Barrett,* for the appellants.

*A. V. De Witt,* for the respondents.

INGALLS, J.:

This action was brought to determine to whom a fund, the proceeds of a policy of life insurance, should be paid. James H. Hannigan being a resident of the city of Albany, on the 21st day of September, 1868, became a member of the Locomotive Engineers' Mutual Life Insurance Association, and received from such association a certificate which he held at the time of his decease. And the portion of such certificate which becomes. material in deciding this case upon this appeal is as follows:

"Locomotive Engineers' Mutual Life Insurance Association, No. 2860.

"*Certificate of Membership and Policy of Life Insurance.*

"This certifies that James H. Hannigan was admitted a member of this association on the 21st day of September, 1868.

"Port Jervis, N. J., *July* 8, 1871.

"C. H. SHERMAN,

"*President.*

"F. ABBOTT,

"*Secretary.*"

Immediately below the signatures of the president and secretary of the association are engraved or printed the following words: "All payments or benefits that may accrue or become due to the heirs of the person insured by virtue of this policy will be payable to . . . . . . or . . . . . . lawful heirs."

The last-mentioned words were not signed by the insured or any other person, and, we think, they were intended merely as a form to be filled up and signed by the insured in case he desired, in that manner, to designate who he intended to be benefited by such insurance. As such blanks were not filled, and the statement was not signed by the insured in his lifetime, the same did not become operative as a designation of the persons who were to receive such fund after the death of the insured. It is very clear that James H. Hannigan intended to accomplish the same purpose by the execution of a will in which he designated the persons who he intended should receive the said fund, and therein specified in what proportions the beneficiaries were to receive the same. The said will, omitting the attestation clause, is as follows:

"The last will and testament of me, James H. Hannigan, of the city of Albany.

"I give and bequeath to my son, James H. Hannigan, the sum of three hundred dollars. I give and bequeath to my son, William A. Hannigan, the sum of one hundred dollars. I give and bequeath to my son, Francis Hannigan, the sum of one hundred dollars. I give and bequeath to my son, John Hannigan, the sum of one hundred dollars. I give and bequeath to my daughter, Mary Hannigan, the

sum of one hundred dollars. I give and bequeath to my sister-in-law, Sarah Farrell, the sum of three hundred dollars in payment of my indebtedness to her. The foregoing will be paid out of the proceeds of my life insurance in and by virtue of my membership in the Locomotive Engineers' Mutual Life Insurance Association, and by virtue of my life insurance policy in that association, and my life insurance in the Exempt Firemen's Association.

"I give, devise and bequeath all the rest, residue and remainder of my property of every kind, including · my above-mentioned life insurance by virtue of my membership and policies of life insurance in the said associations, above named, to my wife, Jane T. Hannigan, absolutely and in fee, and I nominate and appoint my said wife executrix of this my last will and testament.

"In witness whereof, I have hereunto set my hand and seal the second of October, eighteen hundred and eighty-seven.

"JAMES H. HANNIGAN." [L. S.]

Thus it appears that he named his wife and children as the persons who were to receive the fund as the objects of his bounty, with only the addition of his sister-in-law, Sarah Farrell, to whom he bequeathed $300. The testator died on the 7th day of February, 1888, and the will was duly proved, and letters testamentary were issued to Jane T. Hannigan, the widow of the testator. It seems to us quite clear that the words "heirs" and "lawful heirs," employed in the form referred to, should not, in this case, be inter-preted in the technical legal sense of heirs-at-law of the deceased, but rather as intending the widow and children of the deceased, as such rendering would seem more in harmony with the purpose of the association, as evidenced by its by-laws. Article 1 contains the following declaration: "Its object being to aid and benefit *the families of deceased members of the brotherhood in a simple and substantial manner.*" And we think the same purpose can be traced through the by-laws as indicating the class of persons intended to be benefited, and as furnishing a pretty clear intimation in regard to who were intended to be embraced within the term "heirs" or "lawful heirs." This case should be determined in the light of the facts and circumstances which surround it, and the terms employed should receive a reasonable interpretation with the view

to give effect to the purpose of the organization and the intention of the parties. *Kaiser* v. *Kaiser* (13 Daly, 522); *Day* v. *Case* (43 Hun, 179) seems to have been disposed of upon a question not involved in this case. We conclude that, by his will, James H. Hannigan made a proper and sufficient designation of the persons who were to receive the fund in question by naming his wife and children, and that they are the persons who are legally entitled to such fund in the proportions named in the will. In regard to the legacy to Sarah Farrell of $300 the court has found the following : "II. This bequest to Sarah Farrell is invalid as far as concerns the insurance moneys in question in this action, being in derogation of the object of the association expressed in its by-laws, to wit, the aiding and benefiting of families of deceased members." The correctness of such decision, so far as its affects Sarah Farrell, was neither affirmed or combatted before us, and we decide nothing in regard thereto.

We, therefore, conclude that the decision of the trial court was in all respects correct, and should be affirmed.

LEARNED, P. J., and LANDON, J., concurred.

Judgment affirmed, with costs.

55 261
26ap206

SUSANNA FAULKNOR, RESPONDENT, *v.* NICHOLAS H. SWART AND OTHERS, APPELLANTS.

*Counter-claim, acquired by a debtor after an assignment of the claim against him, may be set off against such claim in the hands of an assignee who has not given notice of the assignment thereof.*

One Faulknor agreed to work for Nicholas H. Swart and others, defendants in this action, on January 31, 1887, from which time he worked until May 2, 1887. On February 1, 1887, he agreed with his mother that she should have his earnings for this work, of which agreement Swart and his co-defendants had notice only by the commencement of an action begun in January, 1888, to recover the same.

On May 13, 1886, Faulknor became indebted to the defendant Swart, and on August 17, 1887, Swart assigned to each of his two co-defendants one-third of his claim arising out of this indebtedness.

In an action, brought by the mother of Faulknor under the assignment of his earnings: